UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:                                                              Chapter 11

THE FORT LAUDERDALE                                    Case No. 13-14289-RBR
BRIDGE CLUB, INC.

    Debtor.
_____/

## DEBTOR'S MOTION TO ALLOW SAMUEL D. ROSEN LIMITED RELIEF FROM THE AUTOMATIC STAY AND DETERMINE THAT ARBITRATION CLAIM IS DERIVATIVE OR ALTERNATIVELY TO STAY CLAIM

THE FORT LAUDERDALE BRIDGE CLUB, INC. (the "Debtor"), by and through undersigned counsel, pursuant to 11 U.S.C. 362 and all other applicable law, files this its motion to allow Samuel D. Rosen limited relief from the automatic stay and to Determine that Arbitration Claim is Derivative or to Stay Claim and states:

### BACKGROUND

1. On February 26, 2013 (the "Petition Date"), Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtors have operated as Debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. As of the date hereof, no creditors committee has been appointed in this case. In addition, no trustee or examiner has been appointed.

3. The Debtors is operating its business and managing its affairs as Debtor in Possession pursuant to 11 U.S.C. §§1107(a) and 1108.

4. The Fort Lauderdale Bridge Club, Inc. ("Bridge Club") is a non profit 501(c) (7) Florida Corporation and has managed and operated a bridge club in Fort Lauderdale, Florida since 1958.

5. The Bridge Club has served and continues to serve a special and unique purpose in the City of Fort Lauderdale and throughout the region as a well run and respected facility for residents, primarily elderly, to compete and enjoy the game of bridge at all skill levels.

6. The Bridge Club has approximately 600 members at the present time and those members, as well as many guest who participate in events at the Bridge Club, rely on the club as a place to enjoy the game they love, socialize and be intellectually stimulated. The average age of the Bridge Club Membership is approximately 75.

7. The Bridge Club is also unique in that the City of Fort Lauderdale has long recognized the social and community benefit to the Bridge Club by entering into and continuing a long term Lease for use of the facility located at 700 N.E. 6th Terrace in Fort Lauderdale, located within Holiday Park down the street from the War Memorial Auditorium. The lease is $10.60 per year and clearly a valuable and critical element of the Bridge Club.

8. To state that the Bridge Club is a historical staple of the City of Fort Lauderdale and a long time part of the fabric of the community is not an understatement. The Bridge Club also donates to important and needy charities on a regular basis.

9. As a non profit the Bridge Club is governed by the Board of Governors who are volunteers (unpaid). There is essentially one employee who is designated as a manager and several independent contractors who serve the essential task as bridge game directors. The Bridge Game Directors oversee and manage the bridge games. The Bridge Club continually holds bridge games and is open regularly.

10. The Bridge Club traditionally operated in the positive based primarily on the bridge game fees and would donate funds to needy charities and reserve funds for its building maintenance.

Unfortunately, this has changed due to a substantial amount of litigation pending, primarily derivative claims. The pending law suits brought by a single member, Samuel D. Rosen are as follows:

<u>Fort Lauderdale Bridge Club et al. vs. Allen Bozek, et al.</u>-Case No. 12-012934 CACE (02)
<u>Fort Lauderdale Bridge Club vs. Fort Lauderdale Bridge Club, et al.</u>-Case No. 11-010801 CACE(14)
<u>Samuel Rosen vs. Fort Lauderdale Bridge Club, et al.</u>-Case No. 10-019587 CACE (12)
Claim Pending before the American Arbitration Association

11. Mr. Rosen is a retired lawyer who was an experienced litigator in complex civil matters. The Bridge Club sought to terminate Mr. Rosen's membership due to alleged behavioral issues and did in fact vote to terminate him at a Board Meeting on February 22, 2010. Mr. Rosen filed an action in Broward Circuit Court alleging 11 counts and 171 paragraphs to challenge the Board's actions in terminating his membership as well as various direct actions against the Bridge Club and various Board Members, former Board Members and members for Defamation Breach of Fiduciary Duty and other claims. Case # 10-019587 CACE (12) ("Rosen I"). A true and correct copy of the Verified Amended and Supplemental Complaint in Rosen I is attached hereto as Exhibit "A".[1]

12. The Bridge Club had an insurance policy in place and has been defended by counsel appointed by the carrier and such representation continues.

13. Mr. Rosen prevailed as to a partial summary judgment as to Count I of his claim that the Board vote to terminate him should reversed due to a lack of quorum. Mr. Rosen may be entitled to recovery of costs and this amount needs to be liquidated.

14. Mr. Rosen subsequently filed Rosen II, which in its current for includes 10 Counts, all of which are derivative except for Count X. Mr. Rosen filed a Verified Amended and

---

[1] Because Exhibits "A-F" are voluminous they will only be served on Mr. Rosen and those parties who have filed appearances. The Debtor's counsel shall provide a copy of Exhibits "A-F" to any person upon request and are available on ECF.

3

Supplemental Complaint alleging various additional counts on December 13, 2013. A true and correct copy of the recently filed Verified Amended and Supplemental Complaint in Rosen II is attached hereto as Exhibit "B". Counsel appointed by the carrier has advised that the carrier is providing a defense as to all claims alleged in Rosen II as Amended. Mr. Rosen prevailed as to Counts I and II which concerned the appointment of Board members wherein the By Laws conflicted with the Florida Statutes as to a Board Member filling terms in office by appointment past the next annual meeting. Mr. Rosen may be entitled to attorney's fees and/or costs and the entitlement and amount must be determined and liquidated.

15.    As a result of the substantial amount of litigation brought by Mr. Rosen, the insurance carrier created a "Rosen" exception to the renewed policy and claims brought by Mr. Rosen against the Bridge Club and its officers and directors are no longer covered.

16.    Mr. Rosen filed Rosen III in the Broward Circuit Court on or about May 4th 2012 and amended same on or about June 28, 2012, Case # 12-12034. Rosen III is a purely derivative eight Count Complaint against various current and former Officers and Directors among others. A true and correct copy of the Amended Verified Complaint in Rosen III is attached hereto as Exhibit "C" and the Amended Motion to Dismiss to Dismiss the Amended Complaint is attached hereto as Exhibit "D".

17.    Mr. Rosen filed Rosen III pro se and prior to the Chapter 11 case was prosecuting the case on his own ostensibly on behalf of the Bridge Club.

18.    On or about January 19, 2013, Mr. Rosen filed Rosen IV before the American Arbitration Association. A true and correct copy of the filing by Mr. Rosen in Rosen IV is attached hereto as Exhibit "E". The claims are against several current Board Members and one former Board

4

Member. Mr. Rosen provided a hand written document to the undersigned seeking to elaborate on his claims in Rosen IV which is attached hereto as Exhibit "F".

19.   Based on the fact that the claim was brought as an Arbitration pursuant to the Amended By Laws and the Membership Agreement as well as the allegations in the filing, the Debtor submits that the claims are Derivative in nature and are property of the bankruptcy estate. Mr. Rosen asserts that the claims are not derivative, rather are direct actions.

20.   In regard to Rosen IV, the Bridge Club is seeking a determination that the claims are derivative in nature and thus property of the estate or alternatively that the claims be stayed pursuant to 11 U.S.C. §105 and the equitable powers of this Court.

21.   The Board Members are volunteers and are currently not insured as described above. It is in the interest of all involved that this action be stayed to the extent it is determined the claims are not derivative claims.

## RELIEF REQUESTED

22.   As set forth above, there are several law suits pending. The Debtor believes it is in the best interest of the estate to allow for limited relief from the automatic stay as follows:

Limited Relief from the Automatic Stay as to Case No. 10-19587 CA(12) pending in the Circuit Court for the 17th Judicial Circuit, ("Rosen I") to liquidate the claim as to Count I of the (corrected) Complaint, including judgment, for the Court to determine the entitlement and amount of costs to be awarded (Mr. Rosen has agreed to waive any damage claim as to Count I). The relief sought is solely to liquidate the entitlement and amount of costs awarded, not to proceed with collection or any other action. The attorney fees aspect of the "Plaintiff Samuel D. Rosen's Motion for Taxable Costs and Motion to Determine Entitlement to Costs and Attorneys Fees" should not proceed against The Fort Lauderdale Bridge Club, Inc., as the claim relates to discovery violations of others, not the Bridge Club.

All other aspects and claims in Rosen I should be allowed to proceed solely to Judgment to liquidate the claims for purposes of a Plan of Reorganization or in the alternative against any proceeds of the insurance policy to the extent of coverage.

Limited Relief from the Automatic Stay as to Case No. 11-010801(14), ("Rosen II"), to proceed with

liquidating the entitlement and amount of costs and attorneys fees as to Counts I & II of the Second Verified Amended Complaint. To the extent entitlement is determined in Mr. Rosens favor, the amount of the costs and attorneys fees may be liquidated. The limited relief should not allow for collection or any other action

Limited Relief as to the sole non derivative claim in Rosen II, Count X for Breach of Fiduciary Duty alleged against the entire 2012 and 2013 Board.

23. This will liquidate the amount of the direct claims alleged against the Debtor in order for the Debtor to formulate a plan of reorganization. The Debtor seeks to ensure that the claims which are property of the estate (All claims in Rosen II except count X and all claims in Rosen III which are all derivative)[2] not be prosecuted an any manner by Mr. Rosen and no discovery or any other action be taken by Mr. Rosen in regard to such derivative matters.

24. There will be no prejudice as to any party be allowing the limited stay relief requested above. In fact, Mr. Rosen has repeatedly demanded that he be permitted to proceed. The Debtor seeks to ensure

25. The Bridge Club serves a good and important function in Fort Lauderdale and the South Florida area, particularly for elderly residents and charities to whom the Bridge Club donates. The City of Fort Lauderdale has continually recognized this important function by continuing the lease of the real property through 2040 at 10.60 per year rent. The relief sought will allow an orderly liquidation of claims and enable the Debtor to formulate a plan either by paying any debts owed in full or through coverage, or both.

26. The Debtor further seeks to enforce the stay as to Rosen IV as the claims are derivative or alternatively to stay such claims pursuant to this court's equitable powers.

27. The undersigned has had numerous good faith discussions with Mr. Rosen concerning

6

Rosen IV and we have been unable reach agreement.

**WHEREFORE**, the Debtor respectfully requests the Court to enter an order pursuant to 11 U.S.C. §362 allowing for limited relief from the automatic stay as set forth above, that this Court determine whether Rosen IV is derivative in nature as asserted by the Debtor and therefore precluding Mr. Rosen from prosecuting such claim or alternatively that this Court stay Rosen IV and such other and further relief this court deems just and proper.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served this ____ day of _____, 2013 via CM/ECF and/or U.S. Mail upon all parties listed on the attached service list.

Respectfully submitted,

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court of the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

GAMBERG & ABRAMS
*Attorneys for Debtor*
1776 North Pine Island Road, Suite 309
Fort Lauderdale, Florida 33322
Telephone:    (954) 523-0900
Facsimile:    (954) 915-9016
E-mail:        tabrams@tabramslaw.com

By: /s/ Thomas L. Abrams
    Thomas L. Abrams, Esquire
    Florida Bar No. 764329

---

[2] Debtor asserts the Arbitration claims in Rosen IV are derivative.

## SERVICE LIST

*Notice/Service via ECF Electronic Mail:*

The following is the list of **parties** who are currently on the list to receive e-mail notice/service via CM/ECF for this case:

    Office of the US Trustee-USTPRegion21.MM.ECF@usdoj.gov

*Notice via U.S. Mail:*
Office of the United States Trustee
51 S.W. First Ave #1204
Miami, FL 333130

Samuel Rosen, Pro Se
10175 Collins Ave., Apt 502
Bal Harbor, FL 33154

The Fort Lauderdale Bridge Club
700 NE 6th Terrace
Ft. Lauderdale, FL 33304

Chase
PO Box 15153
Wilmington, DE 19886

Jesse Laird
1412 Avon Lane Apt 36
North Lauderdale, FL 33068

Joe Phillips
6260 Plantation Road
Fort Lauderdale, FL 33317

Lee Atkinson
4322 Lincoln Street
Hollywood, FL 33021

Office Depot
PO Box 689020
Des Moines, IA 50368

8

Polenberg Cooper Saunders & Riesberg
1351 Sawgrass Corporate Pkwy #101
Fort Lauderdale, FL 33323

Robert Kast
19686 Liberty Road
Boca Raton, FL 33434

Rosemary E. Boden
3415 Galt Ocean Drive Box 144
Fort Lauderdale, FL 33308


By: /s/Thomas L. Abrams
THOMAS L. ABRAMS, ESQUIRE