**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
**www.flsb.uscourts.gov**

In re:                                    Chapter 11

**THE FORT LAUDERDALE**                  Case No. 13-14289-RBR
**BRIDGE CLUB, INC.**

          Debtor.
_____/

**DEBTOR'S MOTION TO ASSUME NON RESIDENTIAL LEASE OF REAL**
**PROPERTY WITH CITY OF FORT LAUDERDALE**

**THE FORT LAUDERDALE BRIDGE CLUB, INC.** (the "Debtor"), by and through

undersigned counsel, pursuant to 11 USC 365 and all other applicable law files this it's Motion to

Assume Non Residential Lease of Real Property and states:

## I.  BACKGROUND AND OPERATIONS

1.      On February 26, 2013 (the "Petition Date"), the Debtor filed a voluntary petition in

this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

Since that time, the Debtor has operated as debtors-in-possession pursuant to Sections 1107 and

1108 of the Bankruptcy Code.

2.      As of the date hereof, no creditors' committee has been appointed in this case.  In

addition, no trustee or examiner has been appointed.

3.      The Debtor is operating its business and managing their affairs as debtor in possession

pursuant to 11 U.S.C. §§1107(a) and 1108.

4.      The Fort Lauderdale Bridge Club, Inc. ("Bridge Club") is a non profit 501(c) (7)

Florida Corporation and has managed and operated a bridge club in Fort Lauderdale, Florida since

1958.

5.    The Bridge Club has served and continues to serve a special and unique purpose in the City of Fort Lauderdale and throughout the region as a well  run and respected facility for residents, primarily elderly, to compete and enjoy the game of bridge at all skill levels .

6.    The Bridge Club has approximately 600 members at the present time and those members, as well as many guest who participate in events at the Bridge Club, rely on the club as a place to enjoy the game they  love, socialize and be intellectually stimulated.

7.    The Bridge Club is also unique in that the City of Fort Lauderdale has long recognized the social and community benefit to the Bridge Club by entering into and continuing a long term Lease for use of the facility located at 700 N.E. 6th Terrace in Fort Lauderdale, located within Holiday Park down the street from the War Memorial Auditorium. The lease is $10.60 per year and clearly a valuable and critical element of the Bridge Club.  A true and correct copy of the Lease with the City of Fort Lauderdale is attached hereto as Exhibit "A".

8.    To state that the Bridge Club is a historical staple of the City of Fort Lauderdale and a long time part of the fabric of the community is not an understatement. The Bridge Club also donates to important and needy charities on a regular basis.

9.    As a non profit the Bridge Club is governed by the Board of Governors who are volunteers (unpaid). There is essentially one employee who is designated as a manager and several independent contractors who serve the essential task as bridge game directors. The Bridge Game Directors oversee and manage the bridge games.

**RELIEF REQUESTED**

10.    By this Motion, the Debtor requests that this Court enter an order pursuant to section 365 of the Bankruptcy Code approving the assumption of the Lease with the City of Fort Lauderdale.

2

11.     The Debtor is current on its Lease obligations and timely paid its $10.60 rent for 2013. The Lease is the most valuable asset of the Debtor as it provides the important location for the Bridge Club's operations and enjoyment by its members. The Debtor's assets and continued receipt of revenue and membership payments ensure future performance.

**WHEREFORE**, the Debtor, THE FORT LAUDERDALE BRIDGE CLUB, INC., respectfully requests that the Court enter an order approving the Debtor's assumption of the non residential lease of real property attached to this Motion as Exhibit "A" and   such other and further relief as is just and proper.

Dated this _____ day of _____, 2013.

Respectfully submitted,

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court of the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

GAMBERG & ABRAMS
*Attorneys for Debtor*
1776 North Pine Island Road, Suite 309
Fort Lauderdale, Florida 33322
Telephone:     (954) 523-0900
Facsimile:      (954) 915-9016
E-mail:          tabrams@tabramslaw.com
By: /s/ Thomas L. Abrams
        Thomas L. Abrams, Esquire
        Florida Bar No. 764329

3

## LEASE AGREEMENT

THIS IS A LEASE AGREEMENT (hereinafter "Lease"), made and entered into this _31_ day of _October_, 1995, by and between the CITY OF FORT LAUDERDALE, a municipal corporation of the State of Florida (hereinafter "City"), and THE FORT LAUDER-DALE BRIDGE CLUB, INC., a Florida not-for-profit corporation (hereinafter "Club").

### WITNESSETH:

WHEREAS, the Club is a nonprofit organization which serves the recreational needs of the community, particularly of senior citizens, by providing safe, inexpensive, wholesome quality entertainment, community fellowship and recreation for the citizens of the City, without regard to race, creed, sex, national origin, age or disability; and

WHEREAS, the City finds that the Club and Club activities serve a significant public purpose, and wishes to encourage and assist same; and

WHEREAS, the Club is currently seeking a location to build a new facility in which to operate; and

WHEREAS, the City owns certain land which is not currently necessary for other municipal purposes, which land the Club has asked to lease for a nominal rent; and

WHEREAS, the City desires to rent such land to the Club for a nominal sum provided that the Club continues to serve certain public functions, services and purposes.

NOW, THEREFORE, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

### 1.    DEMISED PREMISES

City hereby leases to Club and Club hereby rents from City, upon the following terms and conditions, the tract of land described as:

SEE SKETCH AND DESCRIPTION ATTACHED HERETO
AND MADE A PART HEREOF

Whenever used herein, the term "Demised Premises" shall include the real estate described above and all attachments and improvements and appurtenances thereto now existing or hereafter constructed. Although Club is leasing the real estate only, and not the improvements thereon, it is intended by both parties that this Lease is to control both real estate and improvements.

Club hereby leases the Demised Premises subject to, and Club hereby agrees to comply with: (i) all applicable building

EXHIBIT

A

codes, zoning regulations, and municipal, county, state and federal laws, ordinances and regulations governing or regulating the Demised Premises or its use by Club; (ii) all covenants, easements and restrictions of record; and (iii) the terms, conditions and restrictions contained herein.

The improvements to the Demised Premises shall sometimes be referred to as the "Leasehold Improvements". The Leasehold Improvements shall include a building ("Leasehold Structure").

## 2. TERM

The term of this Lease shall be for a period of twenty-five (25) years, commencing on August 8, 1995 and terminating on August 7, 2020, unless earlier terminated, as provided herein ("Term").

Provided that Club is not in default in the performance of this Lease, City and Club may upon mutual agreement extend the Lease for two (2) additional Terms of ten (10) years each, commencing at the expiration of each Term ("Extension Term"). All of the terms and conditions of the Lease shall apply during each Extension Term.

This Lease shall terminate at the expiration of the Term as provided above or earlier if:

(a) City terminates this Lease due to a default by Club hereunder; or

(b) Club ceases to exist or ceases to be a non-profit organization.

## 3. RENT

As rent for the Demised Premises, Club shall pay City the annual rent of Ten Dollars ($10) per calendar year, due and payable in full and in advance on the first day of the year for which such rent is due. Rent for the first, partial calendar year shall be paid on the commencement date of this Lease in the full amount of Ten Dollars ($10) (and shall not be prorated). Rent for the last, partial calendar year of this Lease shall also be due in the full amount of Ten Dollars ($10) on the first of such year (and shall not be prorated).

## 4. WARRANTY OF TITLE AND QUIET POSSESSION

City covenants that City is seized of the Demised Premises in fee simple, free and clear of all encumbrances (including any contracts, leases or agreements, threatened or pending condemnation proceedings, suits or proceedings concerning the Demised Premises, other parties' rights of possession, restrictions and undisclosed rights-of-way or easements), and has full right to make this Lease. City covenants that Club shall

- 2 -

have quiet and peaceable possession of the Demised Premises during the Term hereof, subject to the terms and including, but not limited to, conditions provided for herein.

### 5. PAYMENT OF UTILITIES

Club shall pay all monthly utility bills including but not limited to electric, gas, water, sewer, cable and telephone services for the Demised Premises. This will not include utilities for the parking lot or the landscaping.

### 6. USE, CONSTRUCTION AND OPERATION OF DEMISED PREMISES

(a) Use - Club shall use the Demised Premises solely to (i) construct a building of approximately 6,800 square feet and an improved parking lot within eight (8) months of the execution of this Lease; and (ii) thereafter, operate non-profit bridge club activities limited to the running of actual bridge games and associated card games as set forth herein. No other use shall be made of the Demised Premises by Club. City may use the Demised Premises as described herein.

(b) Construction - City must approve all construction work and plans in advance and in writing. Such approval shall not be unreasonably withheld. Construction shall be undertaken in accordance with all applicable federal, state, local and city laws, rules, statutes and ordinances. All construction costs, connection charges, fees, permits, etc. shall be paid by Club. Club shall at all times allow City access across and through the Demised Premises. City shall provide landscaping, irrigation and lighting for the parking lot being constructed by Club to match the existing parking lot that is shared with the Activity Center at Holiday Park.

### 7. CITY'S RIGHT OF USE

Club shall provide the complete and functioning facilities to accommodate the card games currently being held at the Social Center in Holiday Park and will provide weekly beginners, intermediate and advanced bridge lessons. Club shall provide and market to the general public a minimum of eighteen (18) hours per week, at reasonable hours agreed to by City, of card playing and instruction. Club shall collect all reasonable and customary fees and pay all expenses to provide these services. City shall also have priority use of fifty percent (50%) of Card Room "B" for the purpose of providing noncompeting board games such as chess, checkers or monopoly to the public.

- 3 -

8. OWNERSHIP OF IMPROVEMENTS

Title to all improvements constructed on the Demised
Premises by Club as permitted by this Lease shall vest in Club
for the duration of this Lease. Club shall not, however, remove
any improvements from the Demised Premises nor waste or destroy
any improvements on the Demised Premises, except as permitted by
this Lease. Club may, however, remove or destroy any personal
property of the Club's at will.

Except as otherwise provided in this Lease, title to all
improvements on the Demised Premises at the termination of this
Lease shall, without compensation to Club, then vest in City free
and clear of all claims to or against them by Club or any third
person. Club shall defend and indemnify City against all
liability and loss arising from such claims which have been
brought through, against or because of Club. Upon termination of
this Lease, Club's ownership of the improvements shall cease, and
any and all liens or encumbrances (except for easements,
rights-of-way or other encumbrances shown on plat(s) of record or
otherwise acceptable to City) against the improvements which
arise from or through Club's ownership of the improvements shall
likewise cease.

9. SUBORDINATION

City shall never be obligated to subordinate its Fee
Simple title interest in the Demised Premises.

10. OPERATION, MAINTENANCE AND REPAIRS

Throughout the Term, Club shall promptly and diligently,
at Club's sole cost and expense, operate, repair and maintain the
Demised Premises and Leasehold Improvements in good, sanitary
condition and repair, satisfactory to the City, and in accordance
with all applicable laws, rules, ordinances, orders and
regulations of:

      (a) federal, state, county, municipal and other
governmental agencies and bodies having or
claiming jurisdiction, and all their
respective departments, bureaus and officials;

      (b) insurance underwriting boards or insurance
inspection bureaus having or claiming
jurisdiction, including the Florida Insurance
Commission; and

      (c) all insurance companies insuring all or any
part of the Demised Premises or Improvements.

Club shall be responsible for paying, if applicable, any
and all federal, state and local taxes or any other fees and
charges including, but not limited to, special assessments that

- 4 -

might arise out of the Club's operation and occupancy of the Bridge Club or the Club's tenancy of Demised Premises.

## 11.   SALE, ASSIGNMENT AND SUBLETTING

Club may not sell, assign or sublet any or all of its interest in this Lease or the leasehold interest created hereby or any of the Leasehold Improvements.

## 12.   INSURANCE, INDEMNIFICATION AND HOLD HARMLESS

(a)   <u>Fire and Extended Coverage</u> - Throughout the Term, at Club's sole cost and expense, Club shall keep insured all Leasehold Improvements located on or appurtenant to the Demised Premises against loss or damage by fire, and such other risks as are now or hereafter included in an extended coverage endorsement in common use for such improvements, including vandalism and malicious mischief, for the benefit of City and Club as their interests may appear. The amount of insurance shall be sufficient to prevent either City or Club from being a coinsurer under the provisions of the policies, but in no event shall the amount be less than actual replacement cost of the Leasehold Improvements.

(b)   <u>Commercial General Liability Insurance</u> - Club shall maintain in effect throughout the Lease term liability insurance covering the Demised Premises and the Leasehold Improvements in the amount of at least One Million Dollars ($1,000,000.00) for injury to or death of any person, of at least One Million Dollars ($1,000,000.00) for any one accident or occurrence, and at least Five Hundred Thousand Dollars ($500 ,000.00) for property damage. City shall be named as an additional named insured on Club's public liability policies.

(c)   <u>Insurance Generally</u> - Club may procure and maintain insurance not required by this Lease and all such insurance shall be for the mutual benefit of City and Club. Club shall furnish City with copies of all insurance policies promptly on receipt of them or with certificates evidencing the insurance, all at least thirty (30) days before the expiration thereof (subsequent to their initial purchase). All policies shall waive all rights of the insurers to be subrogated to any rights of City against Club or Club against City and shall contain an agreement by the insurer that the policies shall not be

- 5 -

cancelled or modified without at least ten
(10) days' prior written notice to City.

(d)   <u>Indemnification and Hold Harmless</u> - Club shall
indemnify, defend and hold harmless City and
officers, employees and agents of City from
and against any and all liabilities, losses,
claims, judgments, fines, damages, costs and
expenses (including reasonable attorneys'
fees) which may be incurred by, charged to or
recovered from any of the foregoing (i) by
reason or on account of injury to or death of
any person, or damage or destruction of any
person's property, resulting from or arising
out of Club's negligence or misconduct in the
use, occupancy or maintenance of the Demised
Premises or any Leasehold Improvements or its
operations thereon, or the negligence or
misconduct in the acts or omissions of Club's
officers, agents, employees, contractors,
subcontractors, licensees or invitees, acting
within the scope of their employment, or (ii)
arising out of the failure of Club to keep,
observe or perform any of the covenants or
agreements in this Lease to be kept, observed
or performed by Club.

13.   <u>DEFAULT</u>

Each of the following events shall be a default by Club
and a breach of this Lease:

(a)   Abandonment or surrender of the Demised
Premises, or failure or refusal to pay when
due any installment of rent or any other sum
required by this Lease to be paid by Club, or
failure or refusal to perform as required or
conditioned by any other term, requirement,
covenant or condition of this Lease, if not
cured after written notice within the "grace
periods" detailed herein below.

(b)   The subjection of any right or interest of
Club or City, whether in the Leasehold,
Demised Premises or improvements thereon, or
in this Lease, to attachment, execution, lien
or other levy, or to seizure under legal
process of same, if not released or fully
bonded within forty-five (45) days.

(c)   An assignment by Club for the benefit of
creditors or the filing of a voluntary or
involuntary petition by or against Club under
any law for the purpose of adjudicating Club a
bankrupt; or for extending time for payment,
adjustment, or satisfaction of Club's

- 6 -

liabilities; or for reorganization,
liquidation, dissolution or arrangement on
account of or to prevent bankruptcy or
insolvency; unless the assignment or
proceedings, and all consequent orders,
adjudications, custodies and supervisions are
dismissed, vacated, or otherwise permanently
stayed or terminated within sixty (60) days
after the assignment, filing or other initial
event.

(d)   If Club defaults under this Lease, then the
following penalties, remedies and damages
shall apply:  In the event that Club defaults
in the payment of rent, including any
additional rent payable hereunder, and Club
does not cure the default within ten (10) days
after written demand for payment of such rent,
or if Club defaults in the prompt and full
performance of any other provisions of this
Lease, including defaults as herein defined,
and Club does not cure the default within
thirty (30) days after written demand by City
that the default be cured, or such further
time as may be reasonably necessary to cure
such default, then and in any such event City
may, if City so elects but not otherwise, with
or without further notice or demand, forthwith
terminate this Lease and Club's right to
possession of the Demised Premises or, without
possession of the Demised Premises, and in
either case City may reenter the Demised
Premises, and repossess the Demised Premises
and may relet the same after making such
repairs and doing such remodeling as City
deems reasonable to relet the Demised
Premises.   In the event that City shall
terminate this Lease pursuant to Default, then
in addition to any other remedy it may have,
City may recover from Club all damages
incurred by reason of such breach, including
the cost of recovering the Demised Premises.
Also, in the event of termination of this
Lease, title to the improvements on the
Demised Premises shall vest permanently in
City, free and clear of all liens and
encumbrances (except for encumbrances shown on
plat(s) of record, easements, rights-of-way
and other common encumbrances acceptable to
City) of any kind.

Club shall pay all of City's reasonable costs,
charges and expenses, including the fees of
counsel, agents and others retained by City,
incurred in enforcing any of Club's
obligations under this Lease or incurred by
City in any litigation, negotiation or

- 7 -

- 8 -

transaction in which Club causes City, without
City's fault, to become involved or concerned,
if Club shall prevail in any litigation,
negotiation or transaction. Likewise, City
shall pay City's reasonable costs and
expenses, including attorney's fees, if Club
shall so prevail.

14. CITY'S RIGHT TO PERFORM CLUB'S DUTIES AND
OBLIGATIONS

In the event Club fails to perform any of its duties or
obligations under this Lease, City may (but is not obligated to)
perform the same after giving thirty (30) days' notice to Club.
Any amounts reasonably expended by City in so performing shall be
treated as additional rent due from Club with interest at the
"prime" rate of interest plus 5 percent (5%) per annum, to be
paid together with the next rental payment due.

15. CITY'S RIGHT OF INSPECTION

Club shall permit City and its agents or representatives
to enter the Demised Premises and Leasehold Improvements all
reasonable times and with reasonable notice for the purpose of
inspecting the same or making any necessary repairs thereto and
performing any work therein that may be necessary by reason of
Club's failure to make any such repairs or perform any such work,
although City shall have no obligation to do any of the above.

16. LIENS FORBIDDEN

Neither the Club nor anyone claiming by, through, or
under the City, including, but not limited to, contractors,
subcontractors, material men, mechanics, and laborers, shall have
any right to file or place of record any mechanic's or material
man's lien of any sort whatsoever upon the Demised Premises, and
any such lien is hereby specifically prohibited. All parties
with whom the Club may deal are hereby put on notice that the
Club has no power to subject the interest of the City in the
Demised Premises to any claim or lien of any kind or character,
and all such persons so dealing with Club must look solely to the
Club for payment, and not to the City's interest in the Demised
Premises or any other asset of City. Club shall forthwith cause
any lien filed against the City's interest in the Demised
Premises to be immediately released or adequately bonded, and
Club shall and does hereby indemnify City against any such lien
attaching against, through or because of Club, and does hereby
agree to pay any and all costs, charges and expenses, including
reasonable attorney's fees, incurred by City and Club in
connection with the prosecution or defense of any suit in
connection therewith. If Club bonds or satisfies the lien within
forty-five (45) days of the filing of or attachment of such lien,
such lien filings shall not constitute a default by Club.

All persons who might contemplate placing liens of any kind against Club's interest or City's interest in the Leasehold or Leasehold Improvements are hereby further warned that:  (a) the placement of such liens, if not satisfied, bonded, etc., constitutes a default under this Lease; (b) a default under this Lease may, at City's option, trigger termination of this Lease; and (c) if this Lease is terminated, then title to all Leasehold Improvements, and all interest in the Leasehold, shall revert to City free and clear of all liens and encumbrances of any kind.

### 17.   DAMAGE TO THE DEMISE PREMISES

Club is required to reconstruct or rebuild any damaged or destroyed portion of the Demised Premises and Leasehold Improvements to the extent that applicable insurance proceeds so permit, provided however, that Club shall not be required to so reconstruct or rebuild if: (a) the damage or destruction occurs in the last five years of the Term; (b) Club turns over all obtainable insurance proceeds to the City; and (c) Club voluntarily terminates this Lease and turns over the possession of the Demised Premises and Leasehold Improvements to the City without further compensation from City (this is the only circumstance under which Club may terminate this Lease without City's approval at City's sole and absolute discretion).

### 18.   MISCELLANEOUS PROVISIONS

(a)   Notice - All notices permitted or required by this Lease must be given in writing and shall be considered given two business days after deposit with an overnight express postal delivery service, addressed by name and address to the party or person intended as follows:

CITY            City Manager
                City of Fort Lauderdale
                100 North Andrews Avenue
                Fort Lauderdale, Florida   33301

Copy to         Parks and Recreation Director
                City of Fort Lauderdale
                1350 W. Broward Boulevard
                Fort Lauderdale, Florida   33312

Copy to         City Attorney
                City of Fort Lauderdale
                100 North Andrews Avenue
                Fort Lauderdale, Florida   33301

CLUB            President
                Fort Lauderdale Bridge Club, Inc.
                Holiday Park
                Fort Lauderdale, Florida   33304

- 9 -

Either party may, by written notice given at any time or from time to time, require subsequent notice to be given to another individual person, or to a different address, or both.

(b) Entire Agreement - This Lease contains the entire agreement between the parties. No promise, representation, warranty or covenant not included in or attached to this Lease has been or is relied on by either party. Any changes, modifications, additions or amendments hereto must be in writing signed by both parties.

(c) Severability - The invalidity or illegality of any provision of this Lease as to any circumstance, provision or person shall not affect the remainder of this Lease or the applicability of the provision involved to other circumstances or persons to the fullest extent permitted by law.

(d) Successors - Subject to the provisions in this Lease, on assignment, subletting and sale, each and all of the covenants and conditions of this Lease shall be binding on and shall inure to the benefit of the heirs, successors, executors, administrators, assigns and personal representatives of the respective parties.

(e) Governing Law - This Lease shall be governed by and construed in accordance with the laws of the State of Florida.

(f) Captions - The captions of this Lease are for convenience or reference only, and in no way define, limit, or describe the scope or intent of this Lease or in any way affect this Lease.

(g) Reinstatement and Waiver - No waiver of any covenant or conditions contained in this Lease or of any breach of any such covenant or conditions shall constitute a waiver of any subsequent breach of such covenant or condition by either party, or justify or authorize the nonobservance on any other occasion of the same or any other covenant or conditions hereof by either party. No receipt of money by City from Club after the termination of this Lease or after the service of any notice, after the commencement of any suit, or after final judgment for possession of the Demised Premises shall reinstate, continue or extend the Term or affect any such notice, demand or suit.

- 10 -

(h)  Nondiscrimination - In the use and operation
of the Demised Premises, Club shall not
discriminate on the basis of race, creed, sex,
national origin, age or disability.  This
provision shall apply to all activities,
membership, hiring of services or goods or
other actions on or connected with the Demised
Premises.

IN WITNESS WHEREOF, the City and Club have executed this
Lease as of the day and year first above written.

CITY

WITNESSES

CITY OF FORT LAUDERDALE

By _____
        Mayor

By _____
        City Manager

(CORPORATE SEAL)

ATTEST:

_____
        City Clerk

Approved as to form:

_____
        City Attorney

CLUB

WITNESSES:

THE FORT LAUDERDALE BRIDGE CLUB, INC.

By _____
        (President

(CORPORATE SEAL)

ATTEST:

_____
        Secretary

THE FT. LAUDERDALE BRIDGE CLUB, INC.
N 95 000001347

- 11 -

STATE OF FLORIDA:
COUNTY OF BROWARD:

The foregoing instrument was acknowledged before me on
the _18th_ day of _October_, 1995, by _Eugene DuArd Ritke_ and
_Florance Fitzgerald_, as _President_ and _Secretary_,
respectively, of the THE FORT LAUDERDALE BRIDGE CLUB, INC., on
behalf of the corporation. They are personally known to me or
have produced _____ as identification and did
not (did) take an oath.

(SEAL)

Notary Public, State of Florida
(Signature of Notary taking
Acknowledgement)

PEGGY MANZO
MY COMMISSION # CC 492123
EXPIRED: August 28, 1999
Bonded Thru Notary Public Underwriters

PEGGY MANZO
Name of Notary Typed,
Printed or Stamped

My Commission Expires:

PEGGY MANZO
MY COMMISSION # CC 492123
EXPIRES August 28, 1999
Bonded Thru Notary Public Underwriters

Commission Number

LAP:Bridge Club
08/03/95

- 12 -

RESOLUTION NO. 06-86

A RESOLUTION OF THE CITY COMMISSION OF THE CITY OF
FORT LAUDERDALE AUTHORIZING THE PROPER CITY
OFFICIALS TO EXECUTE AN AMENDMENT TO LEASE
AGREEMENT WITH THE FORT LAUDERDALE BRIDGE CLUB
("BRIDGE CLUB") AMENDING THE TERMS THEREOF TO
PERMIT THE BRIDGE CLUB TO UNILATERALLY EXERCISE ITS
OPTIONS TO RENEW THE LEASE FOR TWO (2) ADDITIONAL
TERMS OF TEN (10) YEARS EACH.

WHEREAS, by Resolution No. 95-121, the City Commission of the City of Fort
Lauderdale authorized the proper City officials to execute a lease with The Fort Lauderdale
Bridge Club, Inc., a Florida not for profit ("Bridge Club") corporation for the lease of certain
property within the City's Holiday Park; and

WHEREAS, pursuant to Resolution No. 95-121, the City and Bridge Club entered
into a lease for the property for an initial twenty-five (25) year term from August 8, 1995 through
August 7, 2020, with two (2) ten (10) year options to renew, which such options to renew were
exercisable "upon mutual agreement" of the parties; and

WHEREAS, since the inception of the Lease, Bridge Club has invested substantial
sums in improvements to the property and requests that the Lease be amended to provide them
the unilateral right to exercise the two (2) ten (10) year options to renew; and

WHEREAS, City staff has renewed the request and recommends that it is in the
best public interest that the Lease be amended to permit Bridge Club the ability to unilaterally
exercise the options to renew without further seeking the permission of the City;

NOW, THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE
CITY OF FORT LAUDERDALE, FLORIDA:

SECTION 1.    That the proper City officials are hereby authorized to execute an amendment
of the Lease with the Bridge Club which would permit the Bridge Club to unilaterally exercise the
two (2) ten (10) year options to renew the Lease without seeking any further consent of the City.

06-86

RESOLUTION NO. 06-86                                                        PAGE 2

SECTION 2.    That the Office of the City Attorney shall review and approve as to form all documents prior to their execution by the proper City officials.

ADOPTED this the 6th day of June, 2006.

_____
Mayor
JIM NAUGLE

ATTEST:

_____
City Clerk
JONDA K. JOSEPH

L:\COMM2006\resos\june6\06-86.doc

06-86

CFN # 106363965, OR BK 42625 Page 1551, Page 1 of 4, Recorded 08/18/2006 at 04:04 PM, Broward County Commission, Deputy Clerk 3110

Case 0:12-cv-61223-RSR Doc 21 Filed 04/04/13 Page 18 of 21

6-6-06    K-2

This instrument prepared by:

Robert B. Dunckel, Esq.
Assistant City Attorney
City of Fort Lauderdale
100 North Andrews Avenue
Fort Lauderdale, FL 33301

## MEMORANDUM OF LEASE AGREEMENT

THIS MEMORANDUM OF LEASE AGREEMENT is entered into this 6th day of June, 2006 by and between:

**CITY OF FORT LAUDERDALE**, a municipal corporation, its successors and assigns, 100 North Andrews Avenue, Fort Lauderdale, FL. 33301 (hereinafter, "CITY")

and

**THE FORT LAUDERDALE BRIDGE CLUB, INC.**, a Florida not for profit corporation, 700 N.E. Sixth Terrace, Fort Lauderdale, FL 33304, its successors and assigns (hereinafter, "CLUB")

**KNOW ALL MEN BY THESE PRESENTS:**

1.    **Lease and First Amendment.**  CITY and CLUB executed a Lease Agreement October 31, 1995 ("Lease").   Thereafter, CITY and CLUB entered into a First Amendment to Lease Agreement dated June 6, 2006 ("First Amendment").

2.    **Demised Premises.**   The Demised Premises under the Lease and First Amendment is located in the City of Fort Lauderdale, Broward County, Florida within certain park lands owned by CITY and commonly known as "Holiday Park", such Demised Premises being more particularly described as:

A PORTION OF LOTS 27 THROUGH 32, BLOCK 294, "PROGRESSO", ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 2, PAGE 18, OF THE PUBLIC RECORDS OF DADE COUNTY, FLORIDA, BEING DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF LOT 25 OF SAID BLOCK 294; THENCE ON AN ASSUMED BEARING OF NORTH 00°00'00" EAST, ALONG THE WEST LINE OF SAID BLOCK 294, A DISTANCE OF 59.00 FEET TO THE POINT OF BEGINNING; THENCE CONTINUE, ALONG SAID LINE, A DISTANCE OF 125.00 FEET; THENCE NORTH

Fort Lauderdale Bridge Club
Memorandum of Lease Agreement
06/14/2006
K:\JEA Documents\Fort Lauderdale Bridge Club\BridgeClbMemo.doc

90°00'00" EAST, A DISTANCE OF 68.00 FEET; THENCE SOUTH 00°00'00" WEST, A DISTANCE OF 125.00 FEET; THENCE SOUTH 90°00'00" WEST, A DISTANCE OF 68.00 FEET TO THE POINT OF BEGINNING.

SAID LANDS SITUATE, LYING AND BEING IN THE CITY OF FORT LAUDERDALE, BROWARD COUNTY, FLORIDA, CONTAINING 8500 SQUARE FEET, MORE OR LESS.

3.   **Term.** Under the Lease and First Amendment, the Lease Term commenced August 3, 1995 and terminates August 7, 2020. CLUB has two (2) ten (10) year options to renew.

4.   **Use and Improvements.** Under the terms of the Lease and First Amendment CLUB has constructed a building of approximately 6,800 square feet and parking lot therefor to be used as a non-profit bridge club.

5.   **Repository for Lease and First Amendment.** Copies of the Lease and First Amendment are on file with the Office of the City Clerk for the CITY.

6.   **Purpose and Notice.** The purpose of this Memorandum of Lease Agreement is to place the public on notice that the Demised Premises, owned in fee simple by the CITY is subject to a Lease and First Amendment with the CLUB, the terms and conditions of which may be examined at the Office of the City Clerk for the CITY.

IN WITNESS WHEREOF, the parties hereto have made and executed this Agreement effective the date and year above written

WITNESSES:                                      CITY OF FORT LAUDERDALE

_____                         _____
                                                Jim Naugle, Mayor

Camilla R. Helm
[Witness type or print name]                    _____
                                                George Gretsas, City Manager

Donna Varisco
[Witness type or print name]

(CORPORATE SEAL)                                ATTEST:

                                                _____
                                                City Clerk

Fort Lauderdale Bridge Club
Memorandum of Lease Agreement
06/14/2006
K:\JEA Documents\Fort Lauderdale Bridge Club\BridgeClbMemo.doc

- 2 -

Approved as to form:

_____
City Attorney

STATE OF FLORIDA:
COUNTY OF BROWARD:

      The foregoing instrument was acknowledged before me this
August 4 _____, 2006, by JIM NAUGLE, Mayor of the CITY OF FORT
LAUDERDALE, a municipal corporation of Florida. He is personally known to me and did not
take an oath.

(SEAL)
                      _____
                      Notary Public, State of Florida
                      (Signature of Notary taking
                      Acknowledgment)

                      _____
                      Name of Notary Typed,
                      Printed or Stamped

                      My Commission Expires: January 12, 2010
                      DD500637
                      Commission Number

STATE OF FLORIDA:
COUNTY OF BROWARD:

      The foregoing instrument was acknowledged before me this 1st day
of August _____, 2006, by GEORGE GRETSAS, City Manager of the CITY OF
FORT LAUDERDALE, a municipal corporation of Florida. He is personally known to me and did
not take an oath.

(SEAL)
                      _____
                      Notary Public, State of Florida
                      (Signature of Notary taking
                      Acknowledgment)

                      Sandra A. _____
                      Name of Notary Typed,
                      Printed or Stamped

                      Notary Public State of Florida
                      Sandra Anne Doughlin
                      My Commission DD197734
                      Expires 05/03/2007

                      My Commission Expires: 05/03/2007

                      _____
                      Commission Number    DD197734

Fort Lauderdale Bridge Club
Memorandum of Lease Agreement
06/14/2006
K:\JEA Documents\Fort Lauderdale Bridge Club\BridgeClbMemo.doc

- 3 -

WITNESSES:

_John Aurelius_
.JOHN E. AURELIUS

_Doris E Aurelius_

Doris E Aurelius
[Witness type / print name]

(SEAL)

THE FORT LAUDERDALE BRIDGE CLUB,
INC., a Florida not for profit corporation

By _Mary Short_
Mary Short, President

ATTEST:

_nellie L. Horowitz_
Secretary

STATE OF FLORIDA
COUNTY OF BROWARD:

The foregoing instrument was acknowledged before me this _June 30_,
2006, by Mary Short as President of THE FORT LAUDERDALE BRIDGE CLUB, INC., a Florida
not for profit corporation. She is personally known to me [or] has produced
____ as identification and did not take an oath.

(SEAL)

_John Aurelius_
Notary Public, State of Florida
(Signature of Notary taking
Acknowledgment)

_John E. Aurelius_
Name of Notary Typed,
Printed or Stamped

My Commission Expires:



JOHN E. AURELIUS
NOTARY PUBLIC - STATE OF FLORIDA
COMMISSION # DD319988
EXPIRES 8/13/2008
BONDED THRU 1-888-NOTARY1

JOHN E. AURELIUS
NOTARY PUBLIC - STATE OF FLORIDA
COMMISSION # DD319988
EXPIRES 8/13/2008
BONDED THRU 1-888-NOTARY1

Fort Lauderdale Bridge Club
Memorandum of Lease Agreement
06/14/2006
K:\JEA Documents\Fort Lauderdale Bridge Club\BridgeClbMemo.doc