UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:                                                         Chapter 11

THE FORT LAUDERDALE                                            Case No. 13-14289-RBR
BRIDGE CLUB, INC.

    Debtor.
_____/

## DEBTOR'S MOTION TO STRIKE SAMUEL ROSEN'S CROSS MOTION FOR STAY RELIEF AS TO DERIVATIVE CLAIMS OR IN THE ALTERNATIVE OPPOSITION TO "STAY RELIEF" AS TO DERIVATIVE CLAIMS

THE FORT LAUDERDALE BRIDGE CLUB, INC. (the "Debtor"), by and through undersigned counsel, files this its Motion to Strike Samuel Rosen's Cross Motion For Stay Relief as to Derivative Claims or in the Alternative Opposition to "Stay Relief" as to Derivative Claims (D.E. 35) and states:

## BACKGROUND

1. On February 26, 2013 (the "Petition Date"), Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since that time, the Debtor has operated as Debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. As of the date hereof, no creditors committee has been appointed in this case. In addition, no trustee or examiner has been appointed.

3. The Fort Lauderdale Bridge Club, Inc. ("Bridge Club") is a non profit 501(c)(7) Florida corporation and has managed and operated a bridge club in Fort Lauderdale, Florida since 1958.

4. The Bridge Club has served and continues to serve a special and unique purpose in the City of Fort Lauderdale and throughout the region as a well run a respected facility for residents, primarily elderly, to compete and enjoy the game of bridge at all skill levels. It has and remains one of the top bridge clubs in the country.

5. The Bridge Club has approximately 600 members at the present time and those members, as well as many guest who participate in events at the Bridge Club, rely on the club as a place to enjoy the game they love, socialize and be intellectually stimulated. The average age of the Bridge Club Membership is approximately 75. The members pay an annual membership fee of $25.00.

6. The Bridge Club is also unique in that the City of Fort Lauderdale has long recognized the social and community benefit to the Bridge Club by entering into and continuing a long term Lease for use of the land located at 700 N.E. 6th Terrace in Fort Lauderdale, located within Holiday Park down the street from the War Memorial Auditorium. The lease is $10.60 per year and clearly a valuable and critical element of the Bridge Club.

7. To state that the Bridge Club is a historical staple of the City of Fort Lauderdale and a long time part of the fabric of the community is not an understatement. The Bridge Club, as part of its mission, also donates to important and needy charities on a regular basis.

8. As a non profit the Bridge Club is governed by the Board of Governors who are volunteers (unpaid). There is one employee who is designated as a manager and several independent contractors who serve the essential task as bridge game directors. The Bridge Game Directors oversee and manage the bridge games. The Bridge Club continually holds bridge games and is open regularly.

9. The Bridge Club traditionally operated in the positive based primarily on the bridge game fees and would donate funds to needy charities and reserve funds for its building maintenance. The Bridge Club had net positive revenue of $100,000 from 2008-2010. (The Debtor's Debtor In Possession monthly report for March reflects net positive revenue for March 2013 of approximately $3,000 which would annualize to approximately $36,000). Unfortunately, this has changed due to a substantial amount of litigation pending, primarily derivative claims. The pending law suits brought by a single member, Samuel D. Rosen are as follows:

<u>Fort Lauderdale Bridge Club et al. vs. Allen Bozek, et al.</u>-Case No. 12-012934 CACE (02)
<u>Fort Lauderdale Bridge Club vs. Fort Lauderdale Bridge Club, et al.</u>-Case No. 11-010801 CACE(14)
<u>Samuel Rosen vs. Fort Lauderdale Bridge Club, et al.</u>-Case No. 10-019587 CACE (12)
Claim Pending before the American Arbitration Association

10. Mr. Rosen is a retired lawyer who was an experienced litigator in complex civil matters. The Bridge Club sought to suspend Mr. Rosen's membership due to alleged behavioral issues and did in fact vote to terminate him at a Board Meeting on February 22, 2010. Since that time all hell has broken loose, so to speak.

11. Mr. Rosen filed first filed an action in Broward Circuit Court alleging 11 counts and 171 paragraphs to challenge the Board's actions in suspending his membership as well as various direct actions against the Bridge Club and various Board Members, former Board Members and members for Defamation Breach of Fiduciary Duty and other claims. Case # 10-019587 CACE (12) ("Rosen I"). Since then he has filed three other actions with numerous counts either directly against the club, its officers, directors and others or derivatively. A true and correct copy of all of Mr. Rosen's Complaints are attached as Exhibits to the Bridge Club's Motion to Allow Limited Stay Relief (D.E. 19) as to non derivative direct claims and are incorporated herein by reference. Mr. Rosen, as set forth in his affidavit in support of his recently filed Motion to Convert the Bridge Club

3

to Chapter 7 liquidation, claims to be owed a lot of money, including punitive damages.

12. The Bridge Club had an insurance policy in place and has been defended by counsel appointed by the carrier and such representation continues as to the currently pending direct claims brought by Mr. Rosen against the Bridge Club.

13. As a result of the substantial amount of litigation brought by Mr. Rosen, after an exhaustive search a new carrier insured the Debtor at a substantially higher cost and created a "Rosen" exception to the new policy providing any claims brought by Mr. Rosen against the Bridge Club and its officers and directors are not covered. The Club could not obtain other D&O coverage which protects against further Rosen lawsuits.

14. As Mr. Rosen is a retired litigation attorney, he has either pursued the actions on his own, pro se, or in conjunction with counsel he retains. The Derivative actions have been brought primarily pro se.

15. Due to the lack of insurance, the Bridge Club provided a defense to the defendants in the Derivative actions filed by Mr. Rosen. Mr. Rosen has alleged that providing a defense was improper and that the persons defended or the attorneys should repay the money advanced for their fees and costs and/or that the law firm who defended them should return the funds.

16. The members of the Board, most or all of them have been sued, are elected by the Membership and serve staggered three year terms. They are volunteers, are good people and want to do the right thing for the membership.

17. It is believed that Mr. Rosen has sought to take retribution against anyone who serves and does not do what he says or thinks should be done and is utilizing the leverage of filing derivative claims to get what he wants and/or what he thinks the Club should do. The law suits,

threats and intimidation are constant and relentless. Mr. Rosen recently advised he is ready to file Civil Rights Claims against the Club and others. Mr. Rosen's actions are not limited to litigants, he has filed bar complaints against at least three lawyers representing the Club or its Directors.

18. At the time of filing the Bridge Club still had substantial funds on hand which had been accumulated over a prior tranquil period of club history, however, the litigation, including a fight over the Derivative Claims, was a substantial drain to the Bridge Club's human and financial resources.

19. Mr. Rosen now seeks, through the guise of a cross motion for stay relief relating to D.E.19 which was denied by this court, an order for stay relief to proceed with the Derivative claims which are now property of the estate as a matter of law. In re General Development Corporation, 179 B.R.335 (S.D. Fla. 1995); Matter of Consolidated Bancshares, 785 F.2D 1249, 1253-54 (5th Cir 1986). In re American of Ashburn, Inc., 805 F2d 1515 (11th Cir 1986).

20. Mr. Rosen, with no legal basis, asserts he may somehow proceed with the derivative claims if stay relief is granted solely to liquidate the claims, with all prospective proceeds to go to the Debtor. This is not only prohibited by the Code, it also makes no sense. The Code provides that the Derivative claims are property of the estate. The Debtor or Trustee controls whether the Derivative claim should be maintained and if so, controls the litigation, including who pursues the litigation, if and when it is settled and for how much. Of course, in the context of the Bankruptcy, any settlement is subject to notice, hearing, opportunity to object and bankruptcy court approval. Mr. Rosen cannot bring or maintain the action. Mr. Rosen is already alleging he is owed over $100,000 for attorneys fees, expenses costs relating to the various derivative claims he has brought. See Paragraph 8 of his Motion to Convert (D.E. 32). Furthermore, a risk exists solely to the Debtor (not Mr. Rosen

5

Individually) that in the event the derivative actions or any one of them are not successful attorneys fees and costs will be recoverable against the Bridge Club

## MEMORANDUM

21.  The Cross Motion by Mr. Rosen for "stay relief" to pursue the derivative claims on behalf of the Debtor is inappropriate and should be stricken as a matter of law as it is well established that upon the commencement of a bankruptcy proceeding derivative claims become property of the estate and the right to continue or bring derivative claims vests solely in the debtor in possession. In re General Development Corporation, 179 B.R.335 (S.D. Fla. 1995); Matter of Consolidated Bancshares, 785 F.2D 1249, 1253-54 (5th Cir 1986). In re American of Ashburn, Inc., 805 F2d 1515 (11th Cir 1986). This is not a matter of stay relief, rather, the derivative claims are property of the bankruptcy estate. Mr. Rosen's right to maintain the derivative claims were extinguished by the bankruptcy filing as a matter of law.

22.  The Court in GDC held that "Ashburn and other cases cited above indicate the GDC's bankruptcy extinguished Appellants' right to maintain their derivative action. The derivative claims became part of the bankruptcy estate, and GDC, as debtor in possession, became vested with exclusive authority to pursue them". Id at 338. The GDC Court also set forth the proper procedure to be followed if a party seeks to dispose the debtor in possession from its jurisdiction over the derivative claims, which is to "petition the bankruptcy court pursuant to 554(b) and Rule 6007(b) for an order directing GDC to abandon these claims. Because Appellants indisputably failed to do this, they lack standing to maintain their derivative action." Id. at 339.

23.  As set forth in GDC, only if the Debtor abandons the claims does the shareholder have the right to pursue such claims. The Bridge Club has no intent in abandoning such claims. The

Debtor contemplates as part of a prospective plan ensuring that the Derivative claims are reviewed independently as to whether they should be pursued by the Club. This may entail a request that the Court appoint an independent unaffiliated person to perform such task. Clearly, based on the mass of litigation brought by Mr. Rosen on his own behalf against the Club and many of its current and former officers and directors, he is not the proper person to either make the decision or to pursue the actions. (It is questionable in any event whether a non lawyer could represent the Debtor In Possession pro se as a corporation ordinarily must be represented by counsel. <u>Phillips v. Tobin</u>, 548 F.2d 408 (2nd Cir. 1976) (non lawyer cannot represent corporation in a derivative suit brought by non lawyer on behalf of the corporation))

24.     In addition to the fact that Mr. Rosen has no right to maintain the derivative claims and stay relief is not an available or appropriate remedy, the issue is pre mature at this time, less than two months after the petition was filed.

25.     Moreover, Mr. Rosen recently filed a Motion to Convert this case to Chapter 7. While the Debtor will be vigorously opposing such relief, there is no doubt that if the relief or alternative relief sought were granted (ie, Chapter 11 Trustee) the issue presented would be moot as the Chapter 7 or 11 Trustee would likewise have the sole right to maintain such claims.

### THE ARBITRATION CLAIM FILED BY MR. ROSEN IS CLEARLY DERIVATIVE AND PROPERTY OF THE ESTATE

26.     Mr. Rosen recently filed an Arbitration Claim against several members of the Board. See Exhibit "E" to the Debtor's Motion to Allow Limited Stay Relief (D.E.19) The Debtor submits that the Arbitration Claim is clearly a derivative claim and property of the bankruptcy estate. Mr. Rosen disagrees and asserts the Arbitration claim is a direct action.

7

27.     Under well-established Florida law, a shareholder cannot sue in the shareholders name for injuries to a corporation unless there is a special duty between the wrongdoer and the shareholder and the shareholder has suffered an injury separate and distinct from that suffered by other shareholders. Karten v. Woltin, 23 So. 3d 839 (Fla. 4th DCA 2009). The Court must look to the body of the complaint to determine whether injury is direct to the shareholder or to the corporation. Id. at 841.

28.     In Karten, the person bringing the claim was one of three shareholders of a corporation which owned a restaurant, Louie Louie Too. The claimant owned 25% of the corporation and the other two members owned 50% and 25% respectively. Karten alleged a breach of fiduciary duty asserting that the other two shareholders combined their interests to control the corporation and deprive Karten of profits. He alleged they started a competing restaurant and that they approved an excessive salary for one of the shareholders. Mr. Karten claimed he was the only shareholder damaged by appellees actions. The trial court entered summary judgment finding that the claims by Karten were derivative claims. The Fourth District Court of Appeals affirmed holding that none of the allegations of injuries and mismanagement constitute the type of individualized harm required to file a direct action and avoid the strictures of a derivative action under section 607.07401.

29.     In the case at bar, it is even more clear and evident from Mr. Rosen's Arbitration claim that the claim is a derivative claim. As set forth by Karten, the Court must look to the body of the complaint. Mr. Rosen's Arbitration claim provides as follows:

8

## NATURE OF THE DISPUTE

This Arbitration presents several questions of corporal governance arising, inter alia, from the December 31, 2012 election of new Board Members by the membership of the Club and December 31 2012 approval by the membership of several substantial changes to the Club's By Laws. The essential claim against each respondent is that in these actions and others each of the Respondents violated their fiduciary duty to the membership to the 750 members of the Club by their misfeasance, malfeasance, and outright dishonesty in self interest dealings (e.g. The Club funds paid to Polenberg for the benefit of Bozek ,et al). No claim is made here against the Bridge Club itself and it is not a party hereto)

30. The allegations speak for themselves and if the Arbitration claim is not a derivative claim than nothing is. The claim alleges breach of duty to all members concerning amended by laws that apply equally to all members and seeking apparent return of <u>club</u> funds allegedly taken by the respondents to pay lawyers (Polenberg) to defend Bozek (the PRESIDENT) and others. If the claim had merit, these funds would obviously go back to the Club, not Mr. Rosen. Under the clear standard set forth under Florida law, the claim is derivative as a matter of law. <u>Karten v. Woltin</u>, 23 So 3d 839 (Fla. 4th DCA 2009).

31. Based on the foregoing, the relief sought is improper as a matter of law and should be denied.

**WHEREFORE**, the Debtor respectfully requests the Court to enter an order striking Mr. Rosen's cross motion for stay relief or alternatively denying same.

Dated this 19th day of April, 2013

Respectfully submitted,

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court of the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

GAMBERG & ABRAMS
*Attorneys for Debtor*
1776 North Pine Island Road, Suite 309
Fort Lauderdale, Florida 33322
Telephone:     (954) 523-0900
Facsimile:     (954) 915-9016
E-mail:        tabrams@tabramslaw.com

By: /s/ Thomas L. Abrams
    Thomas L. Abrams, Esquire
    Florida Bar No. 764329

10