UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                                       Case No.: 13-14289-RBR
                                                                              Chapter 11
THE FORT LAUDERDALE
BRIDGE CLUB, INC.,

    Debtor.
_____/

### Creditor's <u>in limine</u>

### Motion for Relief Pursuant to Rule 37 (d),

### Fed. R. Civ. P.

    Creditor, Samuel D. Rosen, here moves this Court, <u>in limine</u>, for an Order striking Debtor's opposition to, and granting default on, Creditor's Motion to Dismiss This Chapter 11 proceeding.\*  Alternatively, at a bare minimum, Creditor is entitled to an Order barring Debtor from offering any evidence or argument at the July 19th trial of Creditor's Motion to Dismiss. Both of these forms of Preclusion Order are expressly provided for in Rule 37(d), Fed. R. Civ. P. The grounds for this motion are that Debtor has thoroughly obstructed Creditor's lawful and proper discovery demands including his 2004 Examination of Debtor, so that Debtor, without even a semblance of colorable justification, has deprived Creditor of his rights.  In support, Creditor respectfully shows as follows:

    1. On April 5, Creditor requested a Rule 2004 Examination/Deposition of the Rule 30(b)(6) representative of the Debtor (and of President Bozek if he was not going to be Debtor's designated representative) for April 16 (Exhibit 1 hereto).

    2. On April 9th, Debtor responded designating Mr. Bozek as its 30(b)(6) witness and offering

---

\*As used herein, "Debtor" means the Ft. Lauderdale Bridge Club, its Estate in Bankruptcy, the Court-appointed Trustee herein, and each of their respective attorneys and agents. Unless the context indicates otherwise, "Creditor" means Rosen, appearing as Credit or <u>pro se,</u> and the attorneys appearing herein as of counsel to him

Page 2

      him for deposition the morning of April 16th or requesting alternative dates.  Debtor also requested prompt provision of a list of the documents Creditor desired so as to facilitate production. (Exhibit 2).

      3.     On April 11th, Creditor provided Debtor with a list of the documents Debtor was to produce in conjunction with the upcoming deposition of the "Debtor (30 b 6) and Bozek." Creditor further confirmed that since Debtor had designated Bozek as its witness there would be just one deposition in combined form.  Creditor also requested Debtor to advise as to the timing of its document production, expressed that it would be more efficient if the documents would be produced in advance of the deposition, and informed that once the deposition date was agreed to, a formal notice would issue. (Exhibit 3)

      4.     On April 15th, at the 341 Meeting of Creditors, Debtor repeatedly objected to questions posed by Creditor on the grounds that they were more properly posed in the 2004 Examination (a position upheld by the presiding officer) and Debtor stated that at the 2004 deposition, Debtor would produce as its designated representatives President Bozek, Treasurer Gellman, and likely Ms. Menzel, Debtor's Bookkeeper who, according to Gellman, had the best knowledge on all of the financial issues (see Exhibit 4, transcript of 341 Meeting).

      5.     On April 16, Creditor provided Debtor with a revised list of documents and proposed May 15, 16, and 17 for the depositions of the various Debtor's 30(b)(6) representatives. (See Exhibit 5)  On April 17th, Debtor responded confirming availability for the afternoons of May 15 and 16 for depositions.  Debtor said nothing about production of the documents requested by Creditor.(Exhibit 6)

Page 3

6. In early May, having heared nothing further from Debtor and having received not a single document in the month that had passed since Creditor's first document request on April 5, Creditor served a formal Notice of 2004 Examination/30(b)(6) deposition of Debtor with a document demand attached. The deposition was scheduled for May 22. (Exhibit 7).

7. Prior to May 22, however, this Court issued an Order for the appointment of a Trustee, the U.S. Trustee designated Kenneth Welt, and this Court, upon Mr. Welt's filing, issue an Order appointing him. Almost immediately thereafter, on Monday May 20th, Debtor and Mr. Pugatch first met with Mr. Welt from 1:00 p.m. to approximately 2:10 p.m., at which time they were joined by Messrs. Marshall and Grant, Trustee's Counsel, and continued until a few minutes after 4:00 p.m. During that meeting, Trustee's Counsel requested an adjournment of the deposition set for May 22 so as to give them an opportunity to get up to speed. Creditor agreed on **condition** that new counsel move forward expeditiously on these discovery demands and, in particular, produce to Creditor the documents described in the Duces Tecum request "as quickly as possible". Counsel for the Trustee agreed and Creditor's counsel then confirmed this agreement in his letter of May 21 (Exhibit 8).

8. On June 4, in response to a question from Creditor's Counsel for an explanation of a $30,000 transfer of funds by Debtor after the Bankruptcy Petition was filed, Trustee Counsel Grant responded "First, regarding the $30k transfer, the money was transferred so the Debtor could create an account with a debit card"*

---

*To creditor's knowledge, the only debit card of the Debtor issued post-bankruptcy filing was one issued to Debtor's Manager, Van Dyke and that card had a $100 limit as per an Order of this Court granting Trustee's application to issue this card to Van Dyke.

Debtor's Counsel further assured that the documents Creditor had demanded would be "available for your inspection and review by Tuesday of next week" i.e. by June 14th. And despite several inquiries from Creditor to the Trustee's Counsel for dates for the depositions made subsequent to the May 20th agreement, Debtor's Counsel declined to provide a single date, responding only as it did on June 4, "We can discuss a time to schedule depositions." (Exhibit 9)

9. Post-June 4, and despite several requests from Creditor, Debtor persistently declined to offer any dates for deposition and despite the promises of document production, produced nothing. Remarkably, this condition continued to exist and as of June 21, over two months since Creditor first provided a list of documents to Mr. Abrams (who produced nothing in response; over one month after Mr. Grant had agreed to move forward on this discovery, including document production "as quickly as possible"), Creditor had received nothing, zero in documents and had no date from Debtor for a deposition. In the face of this non-responsiveness and facing a July 19th hearing date on his Motion to Dismiss (and not wanting to do discovery at the last minute thus hindering trial preparation and imposing substantial additional costs for expedited transcripts) Creditor had no choice but to re-notice the deposition of Debtor for Friday, June 28th and to again formally demand documents (Exhibit 10).

10. Respecting the 2004 Examination/Rule 30(b)(6) Deposition of Debtor, and because of the repeated aforementioned representations by Mr. Abrams as to the people Debtor would produce, Creditor became concerned that the designated people would not be able to testify for the Debtor as to all of the four enumerated 30(b)(6) subjects set forth in Creditor's deposition notice. Creditor had good grounds to be concerned because just prior to the bankruptcy filing Creditor noticed a State law equivalent of Rule 30(b)(6) of Debtor in depending State Court litigation, whereupon defense counsel there produced

Page 5

Bozek who testified to a lack of knowledge on most of the subjects, following which the Debtor then designated Gellman, who also was unable to respond to questions on alldesignated subjects * Thus, concerned about this occurring on June 28th, Creditor's Counsel passed on Creditor's concerns to Mr. Grant so he could make certain before the June 28th deposition that the designated representatives would be able to address each of the four enumerated subject matters. Mr. Grant responded:

> "As for the depositions, Sandy is not going to dictate who we need to produce as witnesses. If Sandy wants Bozek or Gellman he should serve them…[The Trustee] will likely be presenting Justin Greenbaum for deposition …."(Exhibit 11)

11. On June 12th, Mr. Grant further advised that while Debtor would be producing documents responsive "To almost every request… The only request that is objectionable was No.6." Debtor went on to explain that it would not be producing these documents because they "related to litigation". (Exhibit 12) In so responding and objecting, Mr. Grant ignored the express language of Paragraph Number 6 of the document request that provides that in the first instance, Debtor could redact any portion of the documents upon which it asserts a claim of privilege but should produce the remainder of the documents in redacted form and place the redacted portions on it's privilege log. Despite this, Debtor made wholesale redactions and apparently withheld documents as well, many of which were never identified on any privilege log. Several of the redacted documents will be handed or during the oral argument on this motion on July 19.

*A motion to compel discovery had already been filed by Creditor in the State Court and another one was being prepared when the Bankruptcy Petition intervened.

Page 6

    12. On or about June 27, 2013 literally days before the deposition, Debtor produced in excess of 1,000 pages of documents. Notably:

    a. Debtor refused to produce originals of any documents for Creditor's inspection and copying (as required); what Debtor produced were photostats either two or three times removed from the originals, many of which are illegible.

    b. Of the 14 enumerated paragraphs of the document requests Debtor produced documents responsive to only seven;

    c. In response to Debtor's request for production of Debtor's complete insurance policies (applications, dec pages, manuscript and riders/endorsements) set forth in Paragraph No. 11 of the document request, Debtor produced exactly one piece of paper-what appears to be an application of Debtor for a Fidelity Bond – and did not even produce a single page of the other four insurance policies identified by Debtor in its March 6 filing with this Court (doc. 13). (Exhibit 13).

    d. With these documents, Debtor failed to produce its written document response as required by the Rules and produced no privilege log.

    13. Thereafter, on the afternoon of June 27th – with the deposition to begin at 10:00 a,m. the next day – Debtor produced another 1,000 pages of documents without even indicating to which Paragraph or paragraphs Creditor's document demand they pertained, despite this express requirement set forth in the Rules. Apparently also on that date, Debtor purported to comply with the requirement to file a written response to the document demand. This document (Exhibit 14) violates the Rules:

    a. It provides general objections, including privilege, without any privilege log.

Page 7

      b. The response portends future production ("Debtor will provide") and purports to unilaterally reserve Debtor's rights to, inter , "objections, qualifications and/or reservations" that Debtor may conjure up in the future, and concludes with the disingenuous objection" that the **Debtor's** documents are equally available to Creditor.

14. Returning to the first 1,000 pages of documents Debtor produced, by email dated June 26th (Exhibit 15) Creditor informed Debtor of substantial deficiencies in its production, but to no avail; Debtor did not respond or cure.

15. On June 28 the 2004 Examination/Rule 30 (b)(6) deposition of the Debtor proceeded with the Trustee's sole designated representative, Justin Greenbaum. In reviewing the four designated subject matters of the deposition, Greenbaum admitted that he was unable to answer questions respecting any of them, zero, batting 0 for 4 (Exhibit 16 at pp 121 – 23). At the conclusion of this non-event deposition, Creditor demanded of Mr. Grant that he produce witnesses who can testify respecting the four enumerated subject matters. Mr. Grant refused and to this day has not produced a single Rule 30(b)(6) witness, in blatant violation of the Rules.

16. On Monday, July 1, three days after the supposed "2004 Examination" of Debtor, Debtor produced yet another 500 pages of documents, consisting mainly of Debtor's own bank records all without any explanation as to why Debtor could not produce these documents earlier.

17. In a letter to Creditor dated July 2, Debtor enclosed what purports to be a privilege log (Exhibit 17), its first. Notably, Debtor failed to produce any privilege log in a timely manner and thus may not be allowed to produce one untimely, but as important than that is the following:

Page 8

    a. On its face, Debtor's privilege log fails to comply with even the minimum standards universally followed in federal practice and explicitly reiterated in the Instructions set forth in Debtor's document demand.

    b. Debtor did not even provide the most elementary information – the statement of the general nature subject matter of the withheld communication.

    c. Debtor's privilege log claims privilege on communications which, on their face, are not even attorney-client. For example, communications between the Debtor (or its counsel) and its insurance carrier's non-attorney claims adjuster could not possibly be privileged.

    d. Of the numerous redactions Debtor unilaterally made to the documents it did produce, not a single one is listed on the privilege log.

18. Creditor hastens to add that were this wholesale obstruction/failure to comply with discovery committed by a young fledgling attorney, a Federal Court might have a tad of sympathy. Here, however, there could be no question that Mr. Grant is a well experienced, highly talented attorney – as he has demonstrated time and again in appearances before this Court in this bankruptcy matter – and gifted enough to be selected as counsel by the most experienced Trustee in this bankruptcy district to be compensated by the Debtor's estate and upon approval of this Court at an hourly rate likely to be the same or even higher than this Court has approved for Mr. Abrams. In these circumstances, there can be no excuse for Debtor's performance in discovery, nor for the gratuitous snide remarks quoted above from Exhibit 11, hereto. And despite being put on notice respecting this motion, Debtor has continued in its errant ways. For example, Debtor was put on notice early on respecting the numerous documents produced to Creditor in illegible form. Debtor has done nothing to correct this. Indeed,

Page 9

to assist Debtor, during a deposition Creditor conducted on July 2, Creditor took pains to identify on the record, by Bate Stamp numbers, those documents which came up in the examination that were illegible. When Creditor noticed that Counsel attending was not writing down any notes of these numbers that the Creditor was reading into the record, Creditor asked Counsel why he was not making notes of these illegible documents. Counsel declined to respond. The very fact that counsel had no interest in even noting the illegible documents clearly indicated no intention to correct this problem.

19. Starting on July 2, Creditor took extraordinary pains to insure that Mr. Grant was fully informed of the shortcomings in his document production and the consequences, e.g., "The motion we will be filing for your noncompliance with our discovery demands"(Exhibit 18).

20. On July 3, Creditor wrote to Mr. Grant again detailing further deficiencies in Debtor's document production including identifying the significant improprieties of Debtor's privilege log (Exhibit 19).

21. Debtor chose to ignore the July 3 letter and thus, on July 9th, Creditor sent another letter to Mr. Grant again informing that Creditor will have no choice but to file a motion respecting Debtor's noncompliance (Exhibit 20).

22. On July 11th, on the occasion of Debtor actually producing some of the requested survey responses, Creditor wrote to Debtor yet again noting the numerous shortcomings in Debtor's production and Creditor's repeated demands for compliance, all for naught. Creditor concluded by again providing notice that Creditor would be obliged to file a Rule 37 Motion (Exhibit 21). Remarkably, facing substantial remedies of defaults and preclusion Orders, Debtor continued to simply ignore its discovery shortcomings right up through the date this motion is being filed, July 16th.

Page 10

23. Finally, in reviewing the bankruptcy docket on July 12, one of Creditor's counsel noticed that Debtor had not filed a monthly operating report for the month of May and promptly sent an email to Debtor's Counsel requesting it (Exhibit 22). No response has been received to date.

Based upon all of the foregoing Creditor respectfully requests this Court impose the remedy of default on its Motion to Dismiss or, at a minimum, issue a Preclusion Order. In this regard, there is no other remedy available which will restore the rights of the Creditor in this proceeding. To be sure, this Court has a wealth of available options and powers to deal with the offending attorneys, but none of that will recompense Creditor. Neither will monetary sanctions as money is no substitute for dismissal of this Bankruptcy Petition. Nor will a postponement of the July 19th hearing coupled with an Order compelling discovery compliance even begin to recompense Creditor. An adjournment of the hearing for that purpose would only serve to prejudice Creditor and delay even further the almost five months Creditor has already waited to have this ill-advised Bankruptcy Petition dismissed. During this period, Creditor has been obliged to spend tens of thousands of dollars in legal fees and expenses and it would be unfair to Creditor to have to continue on that path for any further period of time to accommodate a Debtor who has so patently failed and refused to comply with proper discovery demands.

July 16, 2013.

Respectfully submitted,

_____
Samuel D. Rosen, Creditor Pro Se
10175 COLLINS AVENUE
APT. 502
BAL HARBOUR, FLA 33154
TEL. 305-868-6096  CELL 917-974-7588

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served upon all parties receiving service via CM/ECF as indicated below on this 16th day of July, 2013.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A)

**RICE PUGATCH ROBINSON SCHILLER, P.A.**
Co-Counsel for Samuel D. Rosen
101 N.E. Third Avenue, Suite 1800
Fort Lauderdale, Florida 33301
Telephone: (954) 462-8000
Facsimile: (954) 462-4300

By: /s/ Chad P. Pugatch
CHAD P. PUGATCH
Florida Bar No.: 220582

**CM/ECF SERVICE LIST**

- Thomas L Abrams    tabrams@tabramslaw.com, lmillspaugh@tabramslaw.com;fcolumbo@tabramslaw.com
- Joe M. Grant    jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Lawrence E Pecan    lpecan@marshallgrant.com, efile@marshallgrant.com;mg197ecfbox@gmail.com
- Chad P Pugatch    cpugatch.ecf@rprslaw.com
- Kenneth A Welt    court@trusteeservices.biz, fl10@ecfcbis.com;pacerfilings@gmail.com

J:\WPDocs\5100 Samuel Rosen - Ft Lauderdale Bridge Club\Pleadings\Motions\Motion in Limine.doc