UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

THE FORT LAUDERDALE            Case No. 13-14289-RBR
BRIDGE CLUB, INC.,             Chapter 11

      Debtor.
_____/

**TRUSTEE'S OBJECTION TO SAMUEL ROSEN'S MOTION TO DISMISS**

Kenneth Welt, the chapter 11 trustee for the above-referenced Debtor (the "Trustee") hereby files this objection (the "Objection") to Samuel Rosen's Motion to Dismiss [D.E. 94] and the supplement thereto [D.E. 130] (collectively the "Motion"), requests this Court deny the Motion without an evidentiary hearing, and states:

**Background**

1. On February 26, 2013 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Up through the appointment of the Trustee, the Debtor operated as Debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. As of the date hereof, no creditors committee has been appointed in this case.

3. As a non-profit organization, the Bridge Club was governed by the Board of Governors who were unpaid. Historically, there was essentially one employee (who was designated as a manager) and several independent contractors (who serve the essential task as bridge game directors). The Bridge Game Directors oversee and manage the bridge games.

4. On May 10, 2013, after the Debtor's voluntary motion to appoint a trustee, Kenneth Welt was appointed as Chapter 11 trustee.

1

5.  Samuel Rosen subsequently filed the Motion, seeking dismissal of the case.

**Analysis**

    **A.  The petition was filed in good faith**

6.  In the Motion's second paragraph, Rosen begins by asserting "Rosen seeks by this motion dismissal of this case. The basis of this motion is that this Chapter 11 proceeding was filed by the Debtor in bad faith. The subsequent appointment of a chapter 11 trustee does not alter these issues." While the appointment of a trustee *does* cure a bad faith filing, the case was not, in fact, filed in bad faith.

    The filing passes the *Piccadilly* test

7.  The determination that a case is filed in bad faith is generally determined by the factors set forth *In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394 (11th Cir. 1988) and its progeny.

8.  The *Piccadilly*[1] factors obviously all weigh against bad faith in this case. There is no secured creditor being thwarted. The Bridge Club continues to operate. The Bridge Club has a number of employees as well as many volunteers. It continues to generate income. As such, under *Piccadilly*, this case was filed in good faith.

    Pursuant to the *Moog* factors, the filing was in good faith

9.  Courts have also considered a number of other factors in determining the good faith of a non-SARE filing. In *In re Moog,* 159 B.R. 357, (Bankr. S.D.Fla. 1993), Judge Mark

---

[1] These factors include whether: "(1) the debtor has only one asset, the property at issue; (2) the debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors; (3) the debtor has few employees; (4) the property is subject to a foreclosure action as a result of arrearages on the debt; (5) the debtor's financial problems essentially are a dispute between the debtor and the secured creditors which can be resolved in the pending state court action; and (6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights." *In re State St. Houses, Inc.,* 356 F.3d 1345, 1346-47 (11th Cir. 2004)

considered the chapter 11 filing of a solvent individual debtor who filed for the sole purpose of restructuring a poorly negotiated divorce settlement. The court noted that the relevant factors in such a case were  "whether the debtor is 'financially distressed'; whether the petition was filed strictly to circumvent pending litigation; and whether the petition was filed simply to get out of a 'bad deal'" *Id.* at 360-361 (citations omitted), Here, none of these is the case.

10. First, the Debtor is most assuredly financially distressed.  While the Debtor still has cash reserves, prior to the Petition Date, the combined costs of defending the actions brought Mr. Rosen, as well as providing for the cost of defense to the individual board members, would have depleted all of their cash reserves within a year.

11. Second, the petition was not filed to circumvent the pending litigation with Mr. Rosen. By the time the petition was filed, Mr. Rosen had already brought four actions against the Bridge Club and/or its members, either derivatively of individually (the "Rosen Actions"). Because the discovery costs in the Rosen Actions were so burdensome, the Bridge Club required a single forum in order to (a) adjudicate all claims against it, (b) evaluate and determine whether any of the derivative actions had any value, and (c) consolidate litigation costs. This will allow the Bridge Club to pay Mr. Rosen's claim in full, to the extent that it is allowed.

12. Finally, there is no "bad deal" the Bridge Club is trying to shed in Bankruptcy. It has assumed its lease with the city of Ft Lauderdale. It continues to operate, and the likelihood of an effective reorganization is very strong.

### Pursuant to *Balboa*, this Court must conclude the petition was filed in good faith.

13. The most relevant factor  in determining whether a petition was filed in good faith was set forth by this Court in *In re Balboa St. Beach Club, Inc.,* 319 B.R. 736, 743 (Bankr. S.D. Fla. 2005). In *Balboa,* this Court noted that the ultimate test "is the presence of an honest

3

intention and a real need and ability on the part of the debtor to effectuate the aim of reorganization." This factor could not weigh more heavily in favor of the good faith of the Bridge Club's filing.

14. First, the sincerity of the board members is apparent. They are <u>volunteers</u>, and Bankruptcy was the only legitimate option for the Bridge Club to escape the crushing costs of endless depositions noticed by Mr. Rosen in the Rosen Actions. The "need" is just as clear. Had the Bridge Club not filed the petition when it did, it would likely be out of money and unable to reorganize.

15. Finally, the Bridge Club's prospects for reorganization are excellent. Bankruptcy affords the Bridge Club the opportunity to adjudicate or estimate Mr. Rosen's unliquidated claims, and pay them in full through a plan of reorganization. Furthermore, it allows it a consolidated forum to have the indemnification and cost-of-defense rights of the various members (who are defendants in the Rosen Actions) determined judicially. Thus, the Bridge Club can pay all of its creditors, removing any disputes as to the validity or enforceability of the debts, reorganize and continue to prosper.

16. As such, it is clear that the petition was filed in good faith, and the Court should deny Mr. Rosen's motion to dismiss the case as a bad faith filing.

> **B. Even if the Petition was filed in bad faith, it was cured by the appointment of a trustee.**

17. If this Court finds that the petition was filed in bad faith, this Court should still deny the Motion to Dismiss. "The basis of the 'bad faith' rule is to protect creditors from a debtor's bad acts." *In re Gucci*, 174 B.R. 401, 411 (Bankr. S.D.N.Y. 1994). In *Gucci,* the court noted that "although [the debtor] may not have filed his cases with the best of intentions, any

damage from his bad acts has been ameliorated by the appointment of the Trustee." *Id.* at 411-12.

18. Here, the case is the same. If Mr. Rosen asserts that individual board members voted to file the petition in bad faith, in order to protect their own individual interests (which the Trustee does not believe is the case), then the appointment of an independent fiduciary removes any chance that the creditor body is prejudiced by the Debtor's alleged bad faith. Just as in *Gucci,* "the creditor body is better protected if the case is not dismissed. The appointment of the Trustee effectively and efficiently protects the creditors as a whole." *Id.* at 411.

### C. Prepetition mismanagement is irrelevant.

19. Mr. Rosen has stated that he intends to present evidence of what he claims to be gross pre-petition mismanagement, and has wasted hours of Estate resources in conducting depositions to prepare for such a presentation. While the Trustee believes that the Bridge Club's prepetition problems are solely of Mr. Rosen's creation, and not due to any inadequacy of management, any alleged mismanagement is now irrelevant.

20. 11 U.S.C 1112(b)(4)(B) provides that cause for dismissal includes "gross mismanagement *of the estate*" (emphasis added). As such, pre-petition mismanagement is irrelevant to a motion to dismiss. *In re Rey* 2006 WL 2457435 at n.3 (Bankr. N.D. Ill. 2006) (referencing *In re Jessen*, 82 B.R. 490, 495 n. 1 (Bankr.S.D.Iowa 1988)). As such, Mr. Rosen should not be permitted to present evidence as to pre-petition mismanagement.

### D. Dismissal under 1112(b)(4)(A) as a Substantial or Continuing Loss to or Diminution of the Estate is would be inequitable

21. Mr. Rosen also seeks dismissal pursuant to section 1112(b)(4)(A), citing a substantial or continuing loss to or dimunition of the Estate. As Mr. Rosen admits, this is a "two-fold" inquiry. First, there must be a loss or dimunition of the kind contemplated by section

1112(b)(4)(A) and there must be an absence of a reasonable likelihood of rehabilitation. 11 U.S.C. § 1112.

22. Section 1112(b)(4)(A) is intended to preserve estate assets by preventing debtor in possession from gambling its business at a creditor's expense when there is no hope of rehabilitation. *In re Lizeric Realty Corp.*, 188 B.R. 499 (Bankr.S.D.N.Y.1995). Here, that is not the case. The Bridge Club is not gambling any of its assets. It is not making risky investments. Its only large expense is litigation with Mr. Rosen. Absent the cost of *litigation* (not the cost of actually paying its creditors), the Bridge Club actually makes a small profit (and it is incorporated as a not-for-profit organization). It would be inequitable for a lawyer, such as Mr. Rosen, who can essentially litigate *pro se* (for free) to create a condition whereby he can achieve dismissal by simply running up the Debtor's costs.

23. Such is the situation in this case. Mr. Rosen notices deposition after deposition; he creates unimaginable and unreasonable demands on the time of opposing counsel[2], and now he claims the dimunition of Estate resources, wholly caused by him, should be grounds for dismissal. This cannot be the case. To allow such conduct would encourage every deep-pocketed creditor to obtain dismissal of an otherwise reorganizable case by simply running up costs.

24. It is easy to see the substantial likelihood of rehabilitation. If Mr. Rosen stands down and allows the plan process to proceed, his allowed claim will be paid in full, and the Estate will no longer lose money. Without the litigation expenses created by Mr. Rosen's unending litigation, the Debtor's income will exceed its liabilities, and it will reorganize and turn a profit.

---

[2] As an example, when the Trustee was first appointed, it took nearly two hours of attorney time to negotiate an extension of time in the arbitration (which was later stayed by this Court), which is typically a matter of professional courtesy, at great expense to the Estate.

25. As such, this Court should deny Mr. Rosen's request to dismiss this case under Section 1112(b)(4)(A).

**E.  Dismissal under 1112(b)(4)(B) for post-petition mismanagement is not warranted**

26. Rosen asserts that the Debtor's post-petition management "has exhibited gross ineptitude and further a willingness to sacrifice the interests of the Estate to the interests of management and other third parties." The only allegation of mismanagement, however, is that the Debtor-in-Possession failed to settle Mr. Rosen's claim. If not settling an unsecured creditor's claim within the first 120 days post-petition were the standard for dismissal of a chapter 11 case, then nearly every case would be converted or dismissed.

27. Additionally, Mr. Rosen claims to have "uncovered serious tax improprieties," but fails to disclose what, if any, improprieties exist. As such, the Trustee is unable to respond to such a bald accusation.

28. In any case, Mr. Rosen does not assert that the Trustee has exhibited any post-petition mismanagement. As such, even if any post-petition mismanagement occurred, the same would be cured by the appointment of a trustee. *See generally Gucci,* 174 B.R. at 411.

**F.  The case should not be dismissed**

29. Bankruptcy is the best and only option to save the Bridge Club. The Bridge Club is a non-profit that provides a valuable service to the city of Ft. Lauderdale, and its prospects for reorganization are incredibly strong. Every single assertion made by Mr. Rosen is either legally insufficient or is a bald factual assertion. Accordingly, Mr. Rosen's Motion presents no issues of material fact, and the Estate should not be forced to waste even more resources for an evidentiary hearing on a Motion to Dismiss which is insufficient as a matter of law.

WHEREFORE, the Trustee requests this Court deny the Motion, and grant such other and further relief as is just and proper.

                Respectfully submitted,

**MARSHALL SOCARRAS GRANT, P.L.**
Attorneys for the Trustee
197 South Federal Highway, Suite 300
Boca Raton, Florida  33432
Telephone No. 561.672.7580
Facsimile No. 561.672.7581
Email:  efile@msglaw.com

By:   /s/ Lawrence E. Pecan
      JOE M. GRANT
      Florida Bar No. 137758
      ADAM D. MARSHALL
      Florida Bar No. 579823
      LAWRENCE E. PECAN
      Florida Bar No. 99086

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this July 17, 2013, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served today on the parties listed below, in the manner indicated..

      /s/ Lawrence E. Pecan
      LAWRENCE E. PECAN

## SERVICE LIST

**SERVED VIA CM/ECF NOTICE**

- Joe M. Grant                jgrant@msglaw.com, efile@msglaw.com
- Thomas L. Abrams        tabrams@tabramslaw.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Chad P. Pugatch           cpugatch.ecf@rprslaw.com
- Kenneth A. Welt           court@trusteeservices.biz, fl10@ecfcbis.com

**SERVED VIA US MAIL**

Samuel D. Rosen
10175 Collins Ave., Apt. 502
Bal Harbour, FL 33154

Soneet Kapila
c/o Kapila & Company
1000 South Federal Highway
Suite 200
Fort Lauderdale, FL 33316

Mark LaFontaine
5100 N Federal Hwy #407
Fort Lauderdale, FL 33308