UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

IN RE:

THE FORT LAUDERDALE BRIDGE
CLUB, INC.,

    Debtor.
_____/

CASE NO. 13-14289 LMI
CHAPTER 11

### SAMUEL D. ROSEN, CREDITOR PRO SE'S OPPOSITION TO THE MOTION FOR PROTECTIVE ORDER OF MARSHALL, GRANT AND PECAN

COMES NOW, SAMUEL D. ROSEN, CREDITOR *Pro Se* ("Rosen"), and offers his Opposition to the Marshall/Grant/Pecan Motion (the "Motion") for Protective Order, and would respectfully show as follows:

1. By way of background, Grant, Pecan and their firm; Marshall Socarras Grant ("MSG") wear several hats in this case. First, MSG is hoping to become an administrative creditor via its pending fee application for $50,000 (Doc. 285). Second, the firm and Pecan are the accused in a pending Rule 11 Sanctions Motion (Doc. 274). Third, and most significantly, Grant and Pecan, as counsel for Debtor, are responsible for what was a complete stonewalling of discovery to the point that there has never even been a Rule 2004 examination of Debtor, let alone a proper response to Rosen's Rule 30(b)(6) Notice of Deposition, or to his document demand. This discovery misconduct is so egregious that Rosen had filed an *in limine* motion pursuant to Rule 37(d), Fed. R. Civ. P., to strike Debtor's pleading and grant Rosen's Motion to Dismiss this Chapter 11 Petition as a discovery sanction, the *in limine* motion to be heard at the outset of the Motion to Dismiss hearing. (*See* Doc. 150). That *in limine* Motion is pending as is

1

Rosen's Motion to Dismiss. However, after Welt was gone, and with him, his counsel, after Tabas became successor Trustee, Rosen concluded that it was now appropriate to seek the additional (or alternative) remedy of monetary sanctions against the departing Grant/Pecan and to have it heard before the hearing, on his Motion to Dismiss. Thus, Rosen filed a supplement to his *in limine* Motion (Doc. 341) seeking to have his *in limine* Motion heard now, before the Motion to Dismiss hearing (which the parties expected to take 3 days) began and to focus on a remedy primarily against Grant/Pecan rather than their former client, the Debtor.

2.  When Rosen sought discovery as to all 3 matters involving Grant, Pecan and MSG, Grant objected, saying that at this time, he would only allow discovery respecting his fee application, nothing else. Rather than engage in motion practice, Rosen accepted Grant's limit on the scope of the first round of discovery, without prejudice.

3.  By agreement, the depositions of Grant and Pecan were to proceed on September 26 and Marshall on October 2, each notice seeking only documents relating to the fee application, *e.g.*, original time entries and correspondence. Neither MSG, Grant nor Pecan filed a Privilege Log but they nevertheless:

    a.  withheld documents claiming privilege;

    b.  refused to produce other documents (*e.g.*, original time entries) on grounds of "relevance."

4.  On September 26, The deposition of Grant began and went as far as it could, given that the new Trustee, Tabas, had MSG's privileged documents, had not yet reviewed them or decided whether to maintain a privilege claim, and was not ready to examine. The deposition was thus continued to a later date on everyone's consent. The same essentially occurred with the

2

deposition of Pecan with the same agreed continuance. As for Marshall, his deposition did not go forward as scheduled on October 2 but instead, Grant and trustee's counsel agreed to postpone it to October 7 and Rosen then went along with that agreement. After making this agreement, however, instead of showing up on Monday, October 7, Grant, late on October 3, filed his instant Motion.

5.  The status as of today is as follows:

    a.  Trustee's counsel has not advised Rosen if he has completed his review of the MSG records provided to him in unredacted form, nor has he provided any "privileged" documents to Rosen;

    b.  The Trustee and his counsel have not yet decided what their position is on the MSG fee application and whether they will or will not take over the opposition to it from Rosen;

    c.  No new dates have been set for any depositions (or continued depositions) of Marshall, Grant or Pecan;

    d.  These depositions may not ever be resumed depending upon whether it is the Trustee or Rosen who will carry the laboring oar in opposing MSG's $50,000.00 fee application.

6.  Turning to the Motion at bar, it is little more than the same recycled arguments as Grant made for Socarras – a non-party, no subpoena,[1] harassment, etc. To this, Grant adds his

---

[1] Brazenly, Grant complaints of no subpoena after admitting that he, Marshall and Pecan agreed to appear without one, after consenting to a postponement, *sine dia*, of the Grant and Pecan depositions to accommodate the trustee, and after he and the trustee worked out an agreement postponing Marshall's deposition to October 7. By now filing this Motion, Grant has shown himself too cute by half.

3

own unsworn statements sans affidavit, sans transcript, that Rosen used the deposition to threaten, to disparage, to harass (¶¶'s 9, 14). To this, Gant adds that what he accuses Rosen of must of course be true because Stearns Weaver has accused Rosen of the same thing!! (¶15). So once again, this Court is asked to accept as gospel, the unsworn testimony of Grant who has already demonstrated that he is anything but reliable. *See, e.g.,* (¶16 of the Motion in which Grant accuses Rosen of threatening a lawsuit for "malpractice."[2]

7.  If the truth be known, Grant's real motivation here is that he cannot withstand even mild cross-examination, panics and says things he will regret when his testimony comes before this Court.

8.  Finally, having familiarized himself with the Stearns Weaver Motion, Grant surely noted that it asked this Court to waive the "meet and confer" requirement of the Local Rules. Grant, however, does not even pay such courtesy to this Court. Instead just proceeding to file this Motion without any pretense of compliance.

WHEREFORE, Rosen respectfully requests that this Motion be denied in its entirety.

Dated: October 22, 2013.                    Respectfully submitted,

                                            /s/ Samuel D. Rosen
                                            Samuel D. Rosen
                                            Creditor, *Pro Se*
                                            10175 Collins Avenue
                                            Apt. 502
                                            Bal Harbour, Florida 33154
                                            Tel.: (305) 868-6096
                                            Cell: (917) 974-7588

---

[2] Were Rosen to sue Grant for malpractice, it would surely be the first time in the annals of U.S. jurisprudence that someone has brought such a claim against an attorney who has never, represented him.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via overnight mail with the Clerk of the Court, and via facsimile to Joel Tabas, Esq. and Greg Freedman, Esq., Tabas, Freedman, Soloff, Brown & Rigali, P.A., 14 NE 1st Avenue, Miami, Florida 33132, and Joe Grant, Esq., Marshall Socarras Grant, P.L., 197 S. Federal Highway, Suite 300, Boca Raton, FL 33432 this 22nd day of October 2013.

Samuel D. Rosen, *Pro Se*
10175 Collins Ave., Apt. 502
Bal Harbor, FL 33154
Tel: (305) 868-6096
Cell: (917) 974-7588